May it please the Court, Sonia Escobio-O'Donnell, I represent Allianz. I would reserve five minutes for rebuttal. Your Honor, we are here on an appeal, notice of appeal from two orders issued by the district court, Judge Snyder in this case, in the cases of Nagrede and Healey. The cases are, and the orders are exactly the same. They were two notices of appeal filed, but the court decided that the orders refer to both. So I will refer just to Nagrede instead of, and I will actually mean both cases. Can I ask you a question? Yes, sir. Why isn't this part of the multi-district litigation program? Your Honor, in this case, plaintiffs, Nagrede did request to have this be consolidated in a multi-district litigation, and the panel made the decision not to, because the cases were in different, the cases involved were in different stages of litigation. Some were very advanced, and so that was, and this is in the record of this court. Everything has been sent to this court. That's the answer to that. So what happened here is that there are a lot, there was a motion by Nagrede for a temporary restraining order and preliminary injunction to enjoin settlement proceedings in Minnesota, which, and they particularly mentioned Mooney, but both the motion and the orders issued by the court really encompass any settlement proceedings, including Mooney. They requested, their request for injunction was based on the old Ritz Act, was based on Rule 65 and Rule 23, and particularly they relied on the district court case of Grider. At that time, the Third Circuit had not decided the case, and the district court in Grider had issued an injunction. That was a Pennsylvania case, and the court had issued an injunction enjoining settlement proceedings in the multi-district litigation in the southern district of Florida before Judge Moreno. And the injunction in that case said, any settlement that affects the class in Grider has to be approved by the judge in Pennsylvania. And based on this, the plaintiffs filed their motion. Now, I'm not going to go into the details of the motion, but, you know, Judge Snyder nominally denied their motion for injunctive relief, but granted the exact relief that they requested, and frankly, the exact relief that the judge in the district court case of Grider gave there in Pennsylvania. But didn't she say she had no intention of interfering or impeding settlement talks, so why are we here? I mean, why are we in Pennsylvania? If it's not going to be a problem. Yes, Your Honor. She didn't say that when she issued the order. She issued the order, and the court can read it. It's in the record, and it's very clear, very much injunctive in nature, and it enjoins the settlement proceedings in any of the countless jurisdictions. It doesn't specify. It just — and it said — it doesn't say that she's enjoining it, but she's enjoining it because that's what she's doing. She directs her clients that in order to settle in other jurisdictions, and I will — I am getting to the end — that they have to have the approval of plaintiff's counsel. The plaintiff's counsel is authorized to conduct the — and I can read it — any discussion of settlement that would affect any claims must be conducted or authorized by plaintiff's co-counsel and must be approved by the court. Now, after she issued this injunction, obviously, the same as Grider, the Grider case, which is the one that we're going to talk about, was decided by the Third Circuit, and it went directly against the district court and against what Judge Snyder had done. As a result of that, she then holds — perhaps as a result of that. She doesn't say that, but as a result of that, there are several status conferences that are held, beginning with September 10th, which this court has in the record, where we ask the court — first of all, we say to her, please remove the stay, lift the stay. She understands that she can do that, and she says that's one of her options, but she doesn't do that. She doesn't lift the stay. She says, I can do that. There are other things I can do. And as the conferences progress, she does say at one point in one of the conferences, I am not going to enforce this in the Mooney and Snyder case. I am not going to enforce this in the Mooney and Snyder case. She just — we have to — now we're in the position where we have to come to this judge every time we want to do something in other litigation, because we have an injunction against those — Kennedy She told the two judges, didn't she, the other — in Minnesota, that she was not going to interfere with their handling of their cases. O'Connell Well, yes, Your Honor. Of course, the judge — Kennedy Is there an overlap? You've got, as I understand it, you've got one of these cases in the Southern District, one in the Central District, two in the District of Minnesota, and one in the Minnesota State Court. Is there an overlap in these classes? O'Connell Plaintiffs originally, when asked for class certification, took the position that there was — that these other cases were distinct. Kennedy I can't understand what you're saying. Either you're talking too fast, or just — or maybe it's the microphone. O'Connell Your Honor, plaintiffs originally, in their class certification motion, took the position that the cases were totally different. The ones in Minnesota were based on Minnesota statutes. Now they're asserting that there is an overlap. And that 50 percent of the class may be decided in the Minnesota cases. The point is, and our position is, that the complaint in this case, in Negrete, it's a RICO complaint. And even the District Court has acknowledged it's very broad, very difficult to prove, based on — it's going to be based, so far as we know, on the testimony of one expert that is a questionable expert. So that the overlap is really — that's something that has to be decided. But what I want to point out to the Court is that there are procedures, and that's what Greider says, the Third Circuit case says, which we would like this Court, and we urge this Court to follow, because it was correctly decided, that there are procedures where class members can come in under Rule 23E, if they feel that their rights are being decided, and they can object, and they can do whatever they need to do under Rule 23E. So that if there is an overlap, there's no reason to think that Judge Montgomery, a federal judge in Minnesota, is not going to protect the class members any less than Judge Snyder here. So Allianz can't help the fact that we were sued in all different places. I mean, we're trying to settle what we can. We were not — we were ordered to settle in Mooney. And actually, Your Honor, if the Court looks in the record, you have it, they're now saying that this is not an injunction, and it was just an order of the Court, like a discovery order that was just trying to move its docket. But when the Court first issued this order, there are numerous letters from plaintiffs' counsel to Allianz demanding their rights. So clearly, these letters show that they believe this was injunctive, that that we were — that we would, if we violated, would be under threat of contempt. And there's no question that this order was issued to protect some of the substantive rights of the — See, I don't — what's hard for me to understand is how you can have an orderly disposition of all these cases, unless there's some coordination. Well, Your Honor — You mean we're going to have one group go this way, another group go another way, another group go another way? No, Your Honor. I think that the rules provide — well, the rules provide for multidistrict coordination, and they applied, and it was denied, for the reasons that the panel believed, you know, the different cases were in different stages. So we're not really here to decide that. That was really decided. They asked, and they were denied. If the Court is worried that some of their — some decisions will be made in the Minnesota litigation, like I said, and like we've said, and like the Grider Court said, there are procedures to ensure that their rights are protected, and that's Rule 23E. What they requested is injunctive relief. How are they going to find out about what's going on in Minnesota, if they're in the southern district of California? Well, Your Honor, when — if there's a settlement, of course, they'll be noticed, and, of course, they will know, because they will be noticed. And they — Well, Your Honor, there's nothing in the law that entitles them to participate in settlement negotiations that are not — in another case, in another Federal case. I mean, there is some coordination among the judges, but there's nothing in the law that entitles this kind of injunction. There's nothing — they have shown the Old Ritz Act does not permit that. This is directly on point with Grider. As the district court here said, it's on all fours with Grider. And there is — they have provided this court with no case that says that the court can do this. This is the way that it works in the class actions. The state cases add another layer, don't they? I'm sorry, Your Honor? Yes, Your Honor, but I believe they've conceded that that is — but they have not — we argue that it violates the Anti-Injunction Act, but they've never — they did not pursue that argument in their response, but they've conceded it. But the injunction does run against you on the state cases. It does. It does, but they've conceded that it violates the Anti-Injunction Act, because they never briefed it. And I suppose maybe they just don't think it's that important to argue about the state cases, or maybe we that were right, but they have not — they did not pursue that argument, as they did not pursue the first-file rule argument, which is also meritless. Let me just ask a question, then, to sum up what you're saying. If they suspect that Alliance is entering into a collusive settlement for very little money, the remedy is a 23E motion? Well, Your Honor, I believe the Grider court said that — and indicates that if there is evidence of collusion, that in that case it may be proper to issue an injunction. But there is no evidence of collusion in this case. It wasn't found by the district court, and they've proposed no evidence of collusion. But I believe that is one of the — That's what the district judges seem to be worried about. And you're saying that if there is any evidence of collusion, they can come in. Well, I'm not saying any. I'm saying if the court finds that there is collusion, as the court did in Ray Manage's case in the Southern District of Florida, I believe the argument would be that the court can issue some sort of injunction. I don't know if the injunction that the court issued here — and that's for another argument in another case — would not — would comply with the Old Ritz Act to the extent that it puts plaintiff's counsel as the lord and king of all the settlements. I mean, it may be that the injunction in Grider, which sort of has the district court judge as reviewing, may be more — a more — a better way to go. But that was exactly what the Grider court said, that if there's evidence of collusion, that may be a different matter. But there is no evidence of collusion here. Not only did the court not find it, there's nothing in the record that shows that. What they claim is collusion is the fact that they found out that there were settlement — because when they filed for class certification, they actually used those — said that those cases were different, so they knew about them. And not only that, but the court in Mooney knew about the class certification here in Negretti because they were — the court in Mooney was given the class certification order. That's all in this record. So there really is no evidence at all of collusion. And we would urge this court to follow Grider. It is the correct — and there really is, as Judge Snyder said, there is no case right on point in the Ninth Circuit. But the Grider case is correctly decided. It shows that the Old Ritz Act can't go as far as Judge Snyder went here and — or as far as the judge in Pennsylvania went. And for that — The Grider court — or the Third Circuit, wasn't it, in Grider? Third Circuit, yes, sir. The court of appeal said that it hadn't found any other appellate cases where a district judge took it upon herself to enjoin other district courts. Yes, sir. Are there any others, or did they just not find them? No, Your Honor. We looked also, and there are just not that many courts that purport to enjoin a sister court in settlement negotiations. So there are no others that we could find. She wasn't enjoining the district. She wasn't enjoining the district court. She was — wasn't that — those orders directed to the lawyers? Yes, Your Honor. But when you direct it to the lawyer, you're — and this court has found — I have a confession to make, all right? I handled a case back in 72, 73, called — it was in-rate bankruptcy, equity funding of America. At that time, the biggest fraud perpetrated on Wall Street, all right? And part of that case was in one court. Another part of it was in another court. And I had the bankruptcy reorganization. There was no way that I could put that reorganization into play unless I had some control over the lawyers in the other two matters, see? So I did issue an order on that, restraining them from carrying out any negotiations until after we'd worked out our plan of reorganization. And, of course, I talked to the other two judges, and they were very happy about that. And we got that straightened out, and we reorganized it, and everybody was happy. And whoever held onto their stock made a lot of money in the future. So I'm just thinking about as a practical matter. I don't know what Alliance's assets are or what it's worth, but is there a danger that if Alliance pays off the people in Minnesota, it's going to somehow affect the people here, or they're not going to have money to come over to California or Florida or wherever and be able to make equitable settlements with these other people? Your Honor, first of all, if there is an overlap, the overlap class will be taken care of in the court in Minnesota. Secondly, they do have Rule 23E. They can go over there and protect the rights. And Judge Snyder told them that. It's in the record. She said she's finally realized, really, but, you know, she just wants this hammer over. She said to them, you have to go to Minnesota and protect whatever rights you want to protect. That is what you need to do when you file this sort of action when so many people file them. That is what the rules provide. That's what Rule 23E provides. Your Honor, in your case, I don't know if bankruptcy has different rules that allow that. I don't know if the lawyers just ---- I don't know if the lawyers didn't appeal the order or felt it was ---- You do whatever you need to do to, you know, protect your jurisdiction and your ability to handle a case. Well, they did it under the All Writs section. Well, Your Honor, in this case, there is a remedy at law. That's Rule 23E. So the All Writs Act, the equitable relief, should not have been used. In your case, maybe you didn't have Rule 23E, so there was no way and no legal protection. That's the other difference. But in this case, they do have Rule 23E. And, Your Honor, just going back to your question before, the injunction was against Allianz, however, not against the judges, and that is one of the problems. Judge Mooney, we went back to the court and said we can't mediate because we have this injunction. She went ahead and issued an order requiring mediation. So, yes, she's not enjoined, but that's our problem. We are. And so we are under this injunction. And there's no question this is an injunction. And, you know, I know I'm running out of time, but our brief outlines, and I will come back on rebuttal if I need to, the reasons why this is an injunction, why it comes squarely within all the requirements for 1292A1. And, yes, we did. Thank you. Thank you, Your Honor. And if there aren't any other questions, I will save my remaining time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. Frank Balint, Bonnet Fairborn, here on behalf of the plaintiff, Negretti. Your Honor, this order by Judge Schneider that was issued was a measured and reasonable response to the circumstances presented to the Court. Consider yourself in her situation. She had just certified a class of over 200,000 senior citizen purchasers. Purchasers of annuities from Allianz. Parties were in the process of developing the notice to be sent out to these 200,000 senior citizens to describe their claims and advise them of the fact that this case had been certified as a class action, nationwide class action for the RICO claims, California class action for the California claims. In the course of this process, counsel were in constant communication with each other to develop this notice that was about to be sent out. It's no small undertaking. Never, ever was word given to plaintiff's counsel that Allianz was in the process of negotiating a release of the claims that we were working on having the notice go out for. In fact, what happened was that we found out serendipitously that you found out  serendipitously. Yes, Your Honor. Okay. We did. It's set forth in the Declaration of Andy Friedman, all of the facts. Not surreptitiously, serendipitously. We found out serendipitously about the surreptitious activities of Allianz. All right. And what happened was they were ordered to mediation in the Minnesota case. It's a very important point, Your Honor, that that case did not involve the same claims as in our case before Judge Schneider. Those are different cases. But what they proposed in that case was that they would enter settlement negotiations if it would expand the claims to include our claims, but the counsel was kept out of that discussion. That's the fact scenario that's laid before Judge Schneider in the Declaration of Andy Friedman. That's the record. That's the evidence before the Court. The Court responds in a very reasonable way. She does not lash out and enjoin anybody. She simply said, inserts her order, and all due respect, I think Allianz is grossly overstating what she said in the order, because the order relates to only claims before her, only the claims that she has certified, that if there's any discussion or settlement with respect to those claims, then plaintiff's counsel needs to be interrogated. Any claim, any action that would affect them. Pardon me? Affect. Not that it's precisely these claims. Any action that may affect them. Correct. That's a little broader than what you just said, I believe. Well, no. I think what she said was, and we're not afraid of the language. I quote the language. I'm sure Your Honor has it right in front of her. Yes, I do have it right in front of me, actually. And it says. Any discussions of a settlement that would affect any claims brought in this litigation. Correct. That would affect these claims. She wants. Affect them, yes. Affect them. Yes, Your Honor. She wants to have plaintiff's counsel involved and she wants to have her court involved. Precisely. So she issues an injunction. It's not an injunction, Your Honor. She, counsel, you know, maybe it's not an injunction, but I think it's enforceable. It goes to the merits of your case. It has all the elements of an injunction. And it's telling counsel they can't participate in these other courts. And that's as good as enjoining the courts, I believe. Not that they can't participate in the other courts. Without you and your permission. Without our involvement. Without your permission. It must be conducted or authorized by you. And so. That's what I said. They can't do it without your permission or without your being conducting it, actually. That's what it says. And so if they were to, for example, as we requested, if they were to assure us that the negotiations they were conducting were not going to affect our claims and our case, they were free to do it. That's not the point. The point is they are enjoined on penalty of contempt or whatever else Judge Schneider can choose to do. They are stopped from engaging in that without your permission or without your conducting it if they might affect these claims. In other words, they can't do it. Now, we know the cases can proceed in different courts and they can indeed affect claims in other courts, especially in state courts. That's what the Anti-Injunction Act is about. So we know that can happen. And this specifically says that. I can understand your arguing that this is okay. But I don't quite understand your argument that it doesn't stop them in other proceedings. And, by the way, as the Supreme Court has said, in effect stop the other proceedings. I don't understand how that cannot be the case in this Court. Because we do attribute some significance to the fact that Judge Schneider agreed, despite that Judge Schneider denied our request for an injunction, instead chose to proceed in this way. I appreciate your saying it's the same effect of an injunction. But to me or to any practitioner, I think at the trial court level would not be that. We would understand it to be. And I think the record shows, the supplemented record, which shows the ongoing evolution of the situation, is that you would seek clarification from the court, which they did. She would clarify it. And she's clarified it in a way, clearly, I think, that's inconsistent with Your Honor's immediate reaction to this language of the injunction. No, she hasn't clarified it. Because they asked her, look, lift your injunction. And she essentially said, lift your order. And she essentially said, no. I'm going to let these cases, I'm going to, I'm not going to interfere with the other judges, but I'm not going to take my order off. Interesting. Now, if all of you think this is really of no use at all and there's no purpose to restrain them, then why doesn't everybody just stipulate to lift it and be done with it? The purpose, Your Honor, it serves, Your Honor, is the coordination purpose that Judge Prager's Senate has emphasized. And that's what? That has been the effect now of this order. Maybe so. But that's what the MDL was supposed to take care of if it did get MDL'd, A. It did not, right. B, I know it didn't. And B, that just sort of short-circuits the question. Can District Judge 1, in effect, have an order out that enjoins action in State and Federal courts unless she said, well, I've decided I'm going to let it go forward? That's the question. And if she really doesn't mean to enjoin those other courts, then why didn't she lift her injunction? Did you suggest this language? Well, Your Honor, there is language in the record that shows the proposed order that we had submitted when we asked for injunctive relief, and it was broader than this. We did not suggest a specific language. That's why we believe it was a measured response. And it was a response that That does put you in the driver's seat, doesn't it? Not if they tell us we're not going to adversely affect your claims. We're not going to do something that's going to affect your claims. And they can do that as a practical matter very easily by giving us that assurance. That was the concern. And when the Court reviews the Grider decision, you'll see that that was sort of the underlying They're cutting into your business, right? They're purporting to release That's what you're worried about. We are worried about the fact that they have, are purporting to expand the class of So what if it would affect your claims? Is there some rule out there that State and Federal courts can be enjoined by another district court because what's done there might affect the claims before a district court issuing the injunction? Do you know of some case that says that? I do, Your Honor. The two cases, and they're not appellate court decisions, and perhaps that's why they weren't cited by counsel. Talking about appellate court. Do you know any appellate court decisions? No, Your Honor. The Grider, in Grider, the Court in effect knocked down one of what was M3, perhaps, and now there are two left. Well. And one of those was an MDL. I think they were both MDL cases, actually, but one of them certainly was an MDL case. That's correct, Your Honor. And the two driving points behind Grider were these. One, that there was absolutely no evidence of collusion. That's not the situation here. I think that on a spectrum, perhaps we don't have conduct that's as egregious as in the managed care case, but I don't think we have conduct that's as innocuous as in Grider. And two, the other underlying factor. Excuse me, counsel. I'm sorry. You said there is evidence of collusion. Yes, Your Honor. Where is that evidence from? In the Declaration of Andrew Freedman, and what I'm referring to is the decision to exclude us from the discussions of the potential expansion of the claims to include our claims. That's what I'm talking about. Right. The collusion, I think, as I read Judge Snyder and what she did, was that the settlements would be for far less than you would wish, but there was no evidence of that. No, because no settlement had been reached. They hadn't even commenced negotiation. That's why I wonder what the collusion is. The concern for potential. To exclude you, that's not collusion, is it? Right. It was the concern for potential, for the potential for that, if we were not there to represent the claims that she has certified. That was the concern. There's always potential when two courts make it a simple negligence case. When two courts have negligence actions and one might reach one result and one might reach the other. And you can call that collusive if you want. But I think the courts have said, no, no, no. When we're talking about reverse options and those kinds of collusions, we mean they're choosing somebody who's really stupid or easy to deal with and they're going to pay his fees and blah, blah, blah, and they're all kinds of things. There's no evidence of that in this case. The only evidence it seems to me you've put forward is maybe they're going to pick up some of the claims that are in this case. So? Without advising counsels. So? What makes that collusive, per se? It leads to the potential for it, for a settlement. And this is the reason why. Well, there's always a potential when there are two courts doing something. There's always a potential for a settlement. And you guys might not get to participate in it. But, so? Maybe the people will get even more. Because the attorneys on the other case are so much better and so much more aggressive that they'll get even more money. That's possible, Your Honor. And perhaps even with our involvement and consistent with the court's order, you would have reached the settlement anyway. And it would have been a great settlement. In fact, it would be a settlement that would have the involvement of everybody, including the people who are prosecuting the specific claims that are being settled. We can bring that to the settlement and have that be part of the settlement before it's presented to the Minnesota court, for example, as a fatal complete. Which doesn't add up to collusion. Maybe we would have been even more wonderful. Or if they had us in there, it would have been an even more wonderful settlement. That's not collusion. That's not what ñ nobody ever called that collusion. And if there were, I think, was it the Third Circuit said something? No, no, it was another circuit. If there were collusion, every time you have different cases going, every time one tries to settle, the other guy will say, well, that's a reverse option, that's collusive. No, you can't have that kind of involvement. That can't be the standard. And it? I'm not saying that's the standard. I'm saying that in Grider, I'm saying that our circumstances are much closer to the situation in managed care, again, where the court, Judge Marino there, felt snookered. It's a similar situation with Judge Snyder here. And she did not ñ she's been careful to emphasize that she's not precluding them from proceeding to litigate in other cases, to engage in settlement negotiations in other cases. She just would like us at the table. Indeed. She wants you at the table. And she's ordering you to be at the table. Because she's the one. If the Minnesota court doesn't want you at the table, or won't. That's not clear. Excuse me? That's not clear that the Minnesota court doesn't want us at the table. I said, if it didn't, her order still stands and says that you've got to be at the table. If the claims that she has certified are being addressed in the settlement in Minnesota, which is not ñ which is pursuing different claims. Affected. Right? Pardon me? Well, if there's no overlap and nobody cares, then why didn't you just lift it? Why didn't you stipulate to lift the order? There's no need to. Because it's implicit in her order. Then unless it affects the claims brought in her litigation, there's no need to do that. And you're saying if you were on the other end of this order, they had obtained this order against your folks. Yes. You say, no problem. I don't have to pay any attention to that. It's not ñ she can't enforce it. It's my contempt. It's nothing you can do to me. I don't have to pay attention to it. And if I do want to pay attention, I'll just give them a phone call and say, well, it's not affected the end. Right? No. Your Honor, I don't think that's fair how I would respond to that. I don't think you would. What I would do is do the same thing that they did. I would bring the order to the attention of the other courts. I would see that the negotiations were coordinated. And I would reapproach Judge Schneider and say, here's how we suggest moving forward in a coordinated fashion. Because you consider yourself enjoined. No. Not necessarily. You just consider yourself under what kind of order? Under an order that's regulating the protocol for managing the ñ for settling the claims before Judge Schneider. Of this case. Yes. So you think that you'd say, well, it's just a protocol thing, and I can follow it for this case. But I don't have to pay any attention to the other cases. Right? No. What I'm saying, Your Honor, is in the Minnesota case, I would negotiate the settlement of the Minnesota claims. And were those negotiations to include the claims before Judge Schneider, right, I would approach Judge Schneider and say, this is what we're doing. And I ñ and that's what they did. And that's what ñ and Judge Schneider said, that's fine. That's not ñ my intent in this order was not to preclude you from that kind of a coordinated resolution. But she didn't lift the order. Of course. And she hasn't lifted it as the State courts at all. With respect to the State court? State courts. I don't believe she's been asked to, Your Honor. That State court defense counsel has never mentioned State court in the same breath as they have with the Orio and Mooney cases. If there was any ñ if there was any reason to be concerned that the Federal RICO claims would be released in connection with a State court action, then I would do what I suspect they would do, and that is to advise Judge Schneider of that. They don't get along with the attorneys in Minnesota. Do we get along with them? Yes. We thought we ñ we thought we had, Your Honor. We thought we had an understanding. I think that's reflected in Mr. Frieden's declaration as well. And now the courts, you know, are coordinating this ñ the resolution of these claims. We sought an MDL, Your Honor, to accomplish just that. And the court concluded no ñ the panel concluded no, it wasn't appropriate to MDL these cases right now. So now you have the district court judge coordinating, trying to resolve it the best way they can. And Judge Schneider concluded that the best way to resolve this thing was not to have one side go off, the other one try to settle out from underneath counsel that she had appointed as class counsel. Well, just so I'm clear, or it's clear, when I dealt with my matter, I got the okay of all the other judges involved. As a matter of fact, they were happy to give me their headaches. So you have a problem here, assuming this is an injunction of one district court interfering with proceedings in another district court. She ñ again, Your Honor, I ñ we attribute significance to the fact that she chose not to enter an injunction. She chose instead to order that the parties before her, if they're going to negotiate the claims that she has certified, have the class representatives involved in that calculation, in that determination. She also, on her own initiative, contacted the other judges. And the judges ñ and this is in the record because of the transcripts of the hearing in the record. The judges ñ in the first hearing she reported, the judges wanted to wait and see what happened with the JPML determination. Then the JPML decided not to transfer the cases. And so then she had another further conversation with the judges in which she made it clear to them and to defense counsel that she did not intend by this order to preclude them from conducting the negotiations in those courts. So this is a situation, right, where with Judge Nelson's question, why are we here, does come up to me because, you know, they, in their ñ Allianz, in its brief, says, well, the reason here is that plaintiffs are free to seek to enforce the order in this court, free to change its mind as to what it's already told them. And Allianz then might not have a mechanism for challenging the legality of an order that's contrary to law and should be vacated. So they appreciate that the judge is not interpreting the order the way they are interpreting it now. No, the judge didn't say that. The judge has said, I'm not going to enforce it. I'm not going to do it now. That's not what I intend to do now. But the order still stands. You know that old concept in mootness where you say, is it likely to repeat? The agency says, well, no, we decided not to enforce this order. And the courts say, well, the question is whether you'll enforce ñ you might enforce it tomorrow. And so they keep the case and decide it. Because you've got an order outstanding ñ I'm sorry. I'm over your time. You don't need to listen to me. Roberts. May I respond, though? Respond. I think, Your Honor, that especially in the most recent transcript, the comments by Judge Schneider made there will address and relieve any concern you have that she's going to change her interpretation of her order to somehow hamstring Allianz's negotiations in the other cases. Thank you. All right. Your Honor, just a couple of points. The first point is that there is absolutely no evidence in this record of collusion, especially of the type of collusion that was involved in in-ray managed care. The plaintiffs were aware of the Mooney case. They specifically named it and all the other cases in their motion for class certification. The court in Mooney was given the class certification order. And what they claim is evidence in the record is the affidavit of their own lawyer saying, well, I didn't hear about these settlement negotiations, and I submit that is absolutely not evidence of collusion. So, pursuant to Grider, we come well within the Grider court's pronouncement that this is an injunction that is impermissible under the Old Ritz Act, and this court should follow Grider and vacate the injunction. And I just wanted to make sure that I again reiterate that the requirements of ruling in the Mooney case and Rule 23E do provide the opportunity for all the class members to object in the fairness hearings. And any problems that they have with any settlement can be brought out there. And if there is some overlap, their clients, the plaintiffs, can object if they don't like the settlement. If they like the settlement, they can take it. And maybe they'll get less attorney's fees, I don't know. Whatever happens. Maybe they're worried about that. But if they're worried about the class members, the class members will be notified and they can object. And there is a procedure under Rule 23E, and that is what the Grider court says. And that is what we are saying, Your Honor, unless there are any other questions. Thank you, Your Honor. Well, you know, a lot of that stuff they set out in these class actions, sometimes it's impossible to understand. Yes, Your Honor, but they do have an attorney representing them. Yeah, well, I mean, I get them. I don't understand. Yes, Your Honor. I'm not going to say that. I agree. I don't either sometimes. On a basis of fine print, you know, I just say, well, maybe I'll get $10 someday. But that's not the point here. The point here is that their lawyers will represent them and they will have notification. Thank you, Your Honor.
judges: Pregerson, Nelson, Fernandez